# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREGORY T. ROMAN, )<br>)<br>Defendant. ) | Case No. 22-00002-01-CR-W-HFS |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW Defendant LTC (ret) Gregory T. Roman ("LTC Roman" or "Roman"), by and through his counsel, and files this Sentencing Memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

## I.  Introduction

Sentencing in this case is set for November 29, 2022 at 11:00 a.m. before the Honorable United States District Judge Howard Sachs. As discussed below, the defendant requests that the Court impose a sentence of 18 months imprisonment followed by a 3-year term of supervised release consistent with the parties' plea agreement. At time of sentencing, the defendant will have paid the mandatory $100 Special Assessment which will be ordered in this case.

## II. Factual Background

On June 7, 2022, LTC Roman pleaded guilty, pursuant to a written plea agreement, to Count 1 of a two-count Indictment charging him with cyberstalking in violation of 18 U.S.C. § 2261A(2). (Doc. 26). Count 2 will be dismissed at time of sentencing. The parties agreed to jointly recommend an 18-month sentence of imprisonment. The Court ordered the preparation of a Pre-Sentence Report (PSR) which has been completed. The defendant is detained and has been in custody since his arrest in this case on December 27, 2021.

## III. Sentencing Recommendation

### A. Objections to Guideline Calculation

The probation office calculated the total offense level as 19, which includes a four-level increase for specific offense characteristics. With a criminal history category I, the resulting guideline range in the PSR is 30 to 37 months. (PSR ¶ 61). The defendant believes the guideline range should be based on a total offense level of 15 with a resulting guideline range of 18 to 24 months.

The defendant objects to the four-level increase because §§ 2A6.2(b)(1)(D) and (b)(1)(E) are not applicable based on the specific offense characteristics of LTC Roman's offense. The language of the guideline provides:

> (1) If the *offense involved* one of the following aggravating factors: (A) the violation of a court protection order; (B) bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; *(D) possession, or threatened use, of a dangerous weapon;* or (E) *a pattern of activity* involving stalking, threatening, harassing, or assaulting the same victim, increase by 2

levels. If the offense involved more than one of subdivisions (A), (B), (C), (D), or (E), increase by 4 levels.

Here, a firearm was not *involved* in the offense, thus the dangerous weapon enhancement is not applicable; and, a "course of conduct" is a required element of the underlying offense, thus a "pattern of activity" is already taken into account in the base offense level.

The 2-level "dangerous weapon" enhancement under subsection § 2A6.2(b)(1)(D) is not applicable because LTC Roman's offense did not involve the possession or threatened use of a firearm. The plain language of the guideline provision requires that the offense *involve* possession or threatened use of a dangerous weapon. This plain language reading is supported by *United States v. Yilmaz,* 910 F.3d 686, 689 (2d Cir. 2018) ("Section 2A6.2(b)(l)(D) simply requires that the offense "involved" the "possession, or threatened use, of a dangerous weapon."). Under the facts of *Yilmaz,* the court found the enhancement was warranted due to the language of the threats (threatened use of a knife). Similarly, in *United States v. Walker,* 665 F.3d 212, 221 (1st Cir. 2011), the court found the 2-level enhancement warranted because appellant threatened to "blow [A.M.W.'s] head off" with a shotgun. In LTC Roman's case, however, while the threats are sufficient to meet the elements of the offense, they do not involve pointing a gun at anyone or even reference the use of a gun. Thus, the threats do not warrant a 2-level enhancement under subsection (D). Further, LTC Roman did not admit to possession of firearms during the duration of this offense. Even if he did make such an admission, or even accepting the PSR assertion that LTC Roman's estranged wife noted the presence of weapons in the home, research does

not reveal caselaw supporting passive possession of a firearm as a basis for the enhancement when the firearm is not "involved" in the offense.

Additionally, the 2-level enhancement for pattern of activity under subsection §2A6.2(b)(1)(E) should not be applied. LTC Roman entered his guilty plea to cyberstalking in violation of 18 U.S.C. § 2261A(2)(B). The offense requires proof that the defendant, "with intent to . . . harass or intimidate . . ., uses … any … electronic communication service … <u>to engage in a course of conduct</u> that … causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person." §2261A(2)(B) (emphasis added). The definition of "course of conduct" is found in 18 U.S.C. § 2266(2) and means a pattern of conduct composed of two or more acts, evidencing a continuity of purpose. LTC Roman admits that he sent emails or text messages between October 18, 2021 and October 28, 2021 that were intended to harass and intimidate the recipients and would be reasonably expected to cause substantial emotional distress to a person. These texts and emails constitute the "course of conduct" which is a required element for a cyberstalking offense. Because stalking under 18 U.S.C. § 2261A(2)(B) requires a "course of conduct" rather than a singular act, LTC Roman's conduct in this case is embodied in the base offense level.

The same double counting issue raised herein was raised in *United State v. Ogden*, 725 Fed.Appx. 441 (8th Cir. 2018) after the district court applied the two-level 'pattern of activity' increase for a defendant who entered a guilty plea to cyberstalking. The Eighth Circuit did not decide the issue because of a harmless error analysis in that the sentencing

court "made clear that even without the pattern enhancement, it would have imposed the same sentence." Research did not reveal any other cases out of the Eighth Circuit on this issue. The First Circuit has addressed and rejected a double counting objection related to the same guideline provision as applied to an offense based on the defendant violating a prior order of protection. *See United States v. Fiume,* 708 F.3d 59, 62 (1st Cir. 2013) (two-level enhancement for violation of a protection order is not doubling counting).

Here, since the base offense level under § 2A6.2(a) accounts for a cyberstalking offense, which elements require proof of a "course of conduct," the two-level enhancement based on the very course of conduct that constitutes the offense is impermissible double counting. Thus, the enhancement under subsection (E) should not be applied.

If the objection to the four-level enhancement is sustained, LTC Roman's Total Offense Level is 15, with a resulting guideline range of 18-24 months. If only one of the objections is sustained, the total offense level of 17 results in a guideline range of 24-30 months.

### B. Requested Sentence

Based on the sentencing factors in 18U.S.C. § 3553(a), and notwithstanding the guideline calculation as set forth in the PSR, the defendant requests this Court impose a sentence of 18 months, consistent with the parties recommended sentence in their plea agreement.

### 1. Nature and Circumstances of the Offense.

The details of the offense are set forth in the Plea Agreement and PSR. The charged offense conduct occurred between on or about October 18, 2021 and October 28, 2021. In that time period, LTC Roman, who had been honorably discharged due to medical disability after an exemplary 20-year career, sent inappropriate violent and vulgar threats to several people via text message and email. The genesis of these wrongful communications was LTC Roman's erroneous belief that the people to whom LTC Roman sent the messages had either failed to support him or were involved in some way with efforts to discredit him during his prior employment with the FBI prior to his resignation in 2017. In hindsight, LTC Roman recognizes he was under a tremendous amount of stress, resulting from medical issues as well as deterioration of his long marriage. LTC Roman's divorce is proceeding amicably albeit slowly due to his incarceration, and he is receiving ongoing medical care for his heart condition. Further, LTC Roman has voluntarily received mental health counseling to address stress, anxiety and emotional health issues that led to his conduct. He is amenable to receiving continued counseling as therapeutically recommended.

### 2. History and Characteristics of the Defendant.

#### a. Military Service

As noted, LTC Roman is medically retired from the military. He joined the U.S. Army in 1983 and was on active duty until February 1987, when he transferred to inactive reserve status until 1989. In March 2001, LTC Roman joined the Missouri National Guard where he served until February 2019, when he returned to the U.S. Army Reserves to accept

a promotion to Lieutenant Colonel. He was employed with the U.S. Army Reserves as a Lieutenant Colonel from February 2019 and served in Wiesbaden, Germany, and Fort Bragg, North Carolina, until his Honorable Discharge in May 2021 due to medical disability.

While engaged in the reserves, LTC Roman was gainfully employed. From 2004 to 2011 LTC Roman was employed as a government contractor at Fort Leavenworth, Kansas as an intelligence officer. From 2011 to 2017, he was employed at the FBI Field Office in Kansas City as an intelligence analyst until his resignation. From 2019 to 2020, LTC Roman was again employed as a government contractor in Fort Leavenworth before returning to Fort Bragg.

LTC Roman earned many positive recognitions in connection with his military service. He was credited for foreign service during his initial military service and obtained multiple decorations including: the Good Conduct Medal, Overseas Service Ribbon, Noncommissioned Officer Professional Development Ribbon (x2), Air Assault Badge, Army Commendation Medal; Expert Infantryman Badge, Army Achievement Medal, and Sharpshooter Badges for the M16 and hand grenade.

Military service has been a significant part of LTC Roman's life. Commitment to service is relatively unique. This rarity is not unnoticed by the Sentencing Commission. As this Court knows, the Sentencing Commission expressly allows the Court to consider whether a departure is warranted for honorable military service pursuant to U.S.S.G. §5H1.11. Prior to *Booker*, courts recognized that military service could be a departure

consideration. *U.S. v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18-24 months, sentence of probation with 3 months home detention not unreasonable in part because of Howe's twenty years of military service followed by honorable discharge.) In *U.S. v. Canova*, 412 F.3d 331 (2d Cir. 2005), Canova was convicted of offenses involving a multi-million-dollar Medicare fraud. The Second Circuit found the district court did not err when departing downward to a sentence of probation in consideration of, among other things, defendant's extensive exemplary service as a volunteer firefighter; and six-year Marine Corps service.

Further, military service can also be considered as a sentencing factor pursuant to 18 U.S.C. §3553(a), in the event the Court finds that such military service is not distinguishable under section 5H1.11.

Unlike the cases referenced immediately above, LTC Roman is not seeking a sentence of probation. Rather, he is requesting a sentence of 18-months imprisonment consistent with the parties' plea agreement. It is respectfully suggested, therefore, that, if the calculated guideline range does not comport with this requested sentence, a variance to an 18-month sentence would be reasonable under the facts and circumstances noted herein.

### b. Letters of Support

The criminal justice system has limited knowledge of an offender outside the pending charges. As such, and in an effort to provide the Court with additional information about the individual, letters of support are provided in anticipation of sentencing. In this case, letters have been gathered. For example, Mike Kindred, Ret. U.S. Army Lieutenant

Colonel, has known Greg Roman for about 20 years. LC Kindred was LTC Roman's Rater and wrote his Officer Evaluation Reports. LC Kindred's letter reflects on LTC Roman's character as a person who in 2005 "actively sought additional responsibility" and "exceeded my expectations" in carrying out the responsibilities; and in 2014 noted LTC Roman to be a "trustworthy, dependable, and competent Intelligence officer" with the "temperament, stature and leadership skills to serve as a senior leader on a Division staff." Similarly, John Calmes, a friend of nearly 35 years, describes LTC Roman as someone "ready to help anyone" and '"a strong person of faith and a very giving and charitable person." Neither letter writer makes excuses for the criminal conduct, but rather provides this Court with information to support the uncharacteristic nature of the defendant's conduct.

### 3. Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence to Criminal Conduct.

A sentence of 18 months is a significant sentence and will serve the ends of justice. LTC Roman is 57 years old, who served his country honorably for 20 years in military service and six years with the FBI. He has spent many years serving in a capacity which inherently reflects LTC Roman's profound respect for the rule of law. It is noteworthy that LTC Roman has no prior criminal history. While LTC Roman's conduct was unquestionably wrongful, which LTC Roman has admitted, accepted responsibility and expressed deep remorse, the conduct was also both anomalous and significantly out of character. LTC Roman has sought and obtained counseling to address the medical, emotional and family issues that lead to his regrettable conduct in this case. He is amenable

to continued counseling. Further, studies show that LTC Roman's recidivism risk will continue to decrease as he ages over 60. *See* USSC, *The Effects of Aging on Recidivism Among Federal Offenders*, 10-11 (2017) ("those oldest at age of release, over 60 years old, had the lowest recidivism rate (16.0%)").

### 4. Need to Avoid Unwarranted Sentencing Disparities.

The parties believe their agreement to jointly recommend an 18-month sentence is appropriate under the facts and circumstances of this case, taking into consideration all facts known to the parties. Because the guideline ranges are advisory, and because the parties have explored all of the facts and considered the stated positions of the victims, the proposed sentence should not be considered to be an 'unwarranted' sentencing disparity. Stated differently, the parties agree that to the extent the sentencing recommendation of 18 months imprisonment differs from the advisory guideline range, the difference is warranted under the facts and circumstances of this particular case.

## IV. Conclusion

WHEREFORE, based on the foregoing, LTC Roman respectfully requests that this Honorable Court impose an 18-month sentence as set out herein, and for any further relief deemed just and proper by the Court.

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By:   /s/ *Marilyn B. Keller*
     MARILYN B. KELLER    MO #39179
     STEPHEN G. MIRAKIAN  MO #29998
     One Kansas City Place
     1200 Main St., Suite 2110
     Kansas City, Missouri 64105
     Tel:  (816) 221-0080
     Fax:  (816) 221-3280
     mbkeller@whmlaw.net
     smirakian@whmlaw.net

***ATTORNEYS FOR DEFENDANT ROMAN***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of November, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

         /s/ *Marilyn B. Keller*
     ***Attorney for Defendant***